J-S33027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM HENRY ROBINSON III, | : | |
| | : | |
| Appellant | : | No. 2255 EDA 2017 |

Appeal from the PCRA Order Entered June 14, 2017
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0000492-2013

BEFORE:    OTT, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:              **FILED AUGUST 17, 2018**

William Henry Robinson appeals from the order entered on June 14, 2017, denying his request for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Robinson raises an after-discovered exculpatory evidence claim in the form of recantation testimony from the victim of Robinson's sex offenses. He also raises ineffectiveness claims and challenges his sexually violent predator ("SVP") designation. We affirm in part, vacate in part, and remand.

A jury convicted Robinson, in October 2013, of rape of a child, aggravated indecent assault, indecent assault, and corruption of minors.[1] The trial court sentenced Robinson to an aggregate term of twenty-seven to fifty-

---

*   Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3121(c), 3125(a)(7), 3126(a)(7), and 6301(a)(1)(i), respectively.

four years' imprisonment and designated Robinson as a SVP. He thus was subject to a lifetime registration requirement under Section 9799.15(a)(6) of the Sexual Offender Registration and Notification Act ("SORNA"). **See** 42 Pa.C.S.A. § 9799.15(a)(6). Robinson filed an appeal to this Court, in which he did not challenge his SVP designation. This Court affirmed his judgment of sentence on August 27, 2015. Robinson did not seek allowance of appeal.

Robinson then filed, on August 2, 2016, through new, privately retained counsel, a petition that he styled as an "Amended Petition for *Habeas Corpus* Relief." Although he labeled the filing an "amended" petition, no prior *habeas corpus* petition appears in the record. He asserted several claims of ineffectiveness by trial and appellate counsel for failing to file a motion to suppress a statement he made to a detective; failing to object to prior bad acts evidence; and failing to raise trial counsel's ineffectiveness on appeal. He also claimed after-acquired evidence in the form of the victim's recantation, and further requested relief due to the alleged cumulative effect of the errors he claimed. **See** Petition, filed 8/2/16, at 4-18 (unpaginated).

The PCRA court treated the *habeas corpus* petition as a timely PCRA petition and on September 28, 2016, issued a notice of intent to dismiss the petition without a hearing, pursuant to Pa.R.Crim.P. 907. Robinson filed a response to the Rule 907 notice, as well as a certification pursuant to 42

Pa.C.S.A. § 9545(d)(1),[2] that the victim's sister would testify that the victim had recanted her trial testimony in a text message. Robinson alleged that the text message read, "I told you that I made up the story that Will touched and raped me. . . . Because I felt that would get you away from him and make you safe." Petition at Exhibit B.

On December 21, 2016, the PCRA court re-issued its Rule 907 notice as to the ineffectiveness claims, but granted an evidentiary hearing for Robinson's claim of exculpatory evidence.

At the hearing, the Commonwealth presented the testimony of the victim, K.W. She testified that her sister told her that Robinson had passed a polygraph test. N.T., PCRA Evidentiary Hearing, 6/2/17, at 14. When she asked how Robinson could pass a polygraph test when he had raped and touched her, her sister told her that she was going to meet with an attorney and would let her know what would happen next. *Id.* at 14-15. A few weeks later, on May 11, 2016, K.W.'s sister told her that she needed to talk to her, and K.W. went to her sister's house. *Id.* at 9, 16. K.W.'s sister asked her if she was, "ready to go back to court" and K.W. replied that she was not. *Id.* at 17. K.W.'s sister then told her there were two ways that she could avoid going back to court: (1) write the text message in question, or (2) sign a

_____

[2] "Where a petitioner requests an evidentiary hearing, the petition shall include a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony. Failure to substantially comply with the requirements of this paragraph shall render the proposed witness's testimony inadmissible." 42 Pa.C.S.A. § 9545(d)(1).

- 3 -

statement recanting her testimony. *Id.* at 18-19. K.W. testified that she decided to send the text message and her sister told her what to write in the text message. *Id.* at 19. After her sister made at least one revision to the text message, K.W. sent it to her sister's phone while they were still together in her sister's house. *Id.*

K.W. testified that, despite the text message, she was not recanting her testimony, and that her testimony at both the trial and the PCRA hearing was truthful. *Id.* at 19-20.

The Commonwealth also introduced into evidence recordings and transcripts of phone calls between the victim's sister and Robinson that occurred while Robinson was in prison. These calls "revealed [Robinson's] efforts to persuade [the victim's sister] to manipulate [K.W.] into recanting her allegations against [Robinson]." PCRA Court Opinion ("PCO"), filed 10/17/17, at 4. The day after the victim sent the text message at issue to her sister, May 12, 2016, the following was recorded during a phone call between Robinson and the victim's sister:

> [Victim's Sister]: So . . . just know that . . . I got . . . I got what you needed . . . so you go ahead and do what you gotta do . . . so that you can go ahead and come home . . . so . . .
>
> [Robinson]: *Unintelligible response*
>
> [Victim's Sister]: I did what I had to do.

Prison Call Transcript, 05/12/06, at 3.

Robinson did not present any evidence other than the text messages between K.W. and her sister. The victim's sister did not testify.

On June 14, 2017, the court rejected Robinson's claim of exculpatory evidence and dismissed the PCRA petition. This timely appeal followed.

Robinson raises three issues in this Court:

I.   Whether the PCRA court erred in denying relief, after the hearing, because [Robinson] established exculpatory evidence that later became available to him in the form of recantation testimony by the complainant who sent a text message to her sister that "I told you that I made up the story that Will touched and raped me . . . because I felt like that would get you away from him and make you safe?"

II.  Whether the PCRA court erred in denying relief, without a hearing, on allegations that trial counsel rendered ineffective assistance in that:

   a. Counsel failed to file a Motion to Suppress [Robinson's] statements made to Detective Heather Long, while he was being escorted into a jail cell following his preliminary hearing at which time he was represented by counsel?

   b. Counsel failed to object to the admission of prior bad act evidence and/or fail[ed] to requesting a limiting instruction with respect to the evidence that [Robinson] committed physical acts of violence against complainant's sister because the Commonwealth's Motion *in Limine* filed pursuant to Pa.R.E. 404(b) lacked specificity, and [it was] highly inflammatory evidence whose prejudicial impact outweighed its probative value?

   c. Counsel failed to object and/or request a limiting instruction to the admission of evidence by the complainant's mother that [Robinson] started dating the complainant's fourteen (14) year old sister when he was eighteen (18) years old because this is prior bad act evidence for which the Commonwealth failed to provide

- 5 -

notice of its intention to introduce at the time of trial, and its prejudicial impact outweighed its probative value?

III. Whether the finding by the trial court that [Robinson] is a Sexually Violent Predator, and subject to the registration requirements of the Sexual Offender Registration and Notification Act ("SORNA") is unconstitutional, and as such an illegal sentence?

Robinson's Br. at 4-5 (unnecessary capitalization and suggested answers omitted).

**AFTER-DISCOVERED EXCULPATORY EVIDENCE**

Robinson contends that the PCRA court erred in not granting a new trial based upon his claim of after-discovered exculpatory evidence. ***See*** Robinson's Br. at 26. To establish such a claim, a PCRA petitioner must plead and prove all of the following: (1) the evidence was discovered after trial and could not have been obtained prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) the evidence is not being used solely for impeachment purposes; and (4) the evidence would have likely compelled a different verdict. ***Commonwealth v. D'Amato***, 856 A.2d 806, 823 (Pa. 2004).

Robinson predicated his claim on the victim's alleged recantation of her trial testimony. However, "recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true." ***Commonwealth v. Mosteller***, 284 A.2d 786, 788 (Pa. 1971) (citing ***Commonwealth v. Coleman***, 264 A.2d 649, 651 (Pa. 1970)). As such, the PCRA court must assess "the credibility and significance of the

recantation in light of the evidence as a whole," before granting PCRA relief based on a trial witness's alleged recantation. ***D'Amato***, 856 A.2d at 825. We therefore give deference to the findings of the PCRA court. ***Commonwealth v. Johnson,*** 966 A.2d 523, 539 (Pa. 2009).

Here, the PCRA court assessed K.W.'s credibility and the significance of the text message in light of all the evidence presented, and concluded that K.W. was not, in fact, recanting her trial testimony. ***See*** PCO at 7. The record supports this conclusion. At the evidentiary hearing, K.W. was adamant that she was not recanting her trial testimony and that Robinson had raped her. Additionally, she explained that her sister had coerced her into sending the alleged recantation text, by using K.W.'s fear of having to go back to court against her. The PCRA court aptly stated:

> Here, [Robinson] bore the burden of proof at the PCRA hearing. He presented . . . only the text messages purportedly sent by [K.W.] to [her sister]. . . . The Commonwealth conversely, presented credible testimony and evidence demonstrating that [K.W.] did not actually recant her allegations against [Robinson]. . . . In addition, [K.W.] testified credibly at the PCRA hearing that she was not recanting her trial testimony. . . .

***Id.***

Robinson failed to prove that the evidence presented would have likely resulted in a different verdict and therefore no relief is due. Thus, the PCRA court did not err in denying relief to Robinson.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

Next, Robinson contends that the PCRA court erred in denying him relief for his three claims of trial counsel ineffectiveness. Robinson claims that trial counsel was ineffective for failing to: (1) file a motion to suppress a statement that Robinson made to a detective after his preliminary hearing; (2) object to, and/or request a limiting instruction for, K.W.'s testimony that she saw Robinson physically abuse her sister; and (3) object to, and/or request a limiting instruction for, testimony by K.W.'s mother that Robinson started dating K.W.'s sister when he was 18 years old and K.W.'s sister was 14 years old.

When a petitioner alleges ineffective assistance of counsel, counsel is presumed to have rendered effective assistance. *Commonwealth v. Turetsky*, 925 A.2d 876, 880 (Pa.Super. 2007). A claim of ineffective assistance of counsel requires the petitioner to show: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) the petitioner "suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different." *Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015). A claim of ineffectiveness will be rejected if the petitioner fails to satisfy any prong of the test. *Commonwealth v. Sattazahn*, 952 A.2d 640, 653 (Pa. 2008).

*FAILURE TO FILE MOTION TO SUPPRESS*

On the morning of the day of trial, the Commonwealth moved *in limine* to introduce into evidence Robinson's statements to Detective Heather Long. The Commonwealth explained the circumstances of Robinson speaking with Detective Long:

> [T]he situation that occurred was after the preliminary hearing[,] Detective Long was putting another prisoner into the holding cell at Pottstown. [Robinson] said, I want to talk to you. Before she could answer, he said, I did [not] put my penis in [K.W.'s] vagina, but I kissed her. [Detective Long] said, I can[not] talk to you without your lawyer present. I need to talk to your lawyer first to see if I have permission to talk to you. [Detective Long] goes and calls Tom Carroll, who represented [Robinson] at the preliminary hearing. Tom Carroll tells Detective Long to inform [Robinson] not to say anything. She goes back and informs him of that. And he says, F my attorney, I kissed her, but I did [not] put my penis in her vagina, that is why I was laughing during the prelim[inary] [hearing]. . . .

N.T., Trial, 10/8/13, at 3-4.

Defense counsel did not object to the Commonwealth presenting this evidence at trial and conceded that Robinson had waived his right to counsel by initiating the conversation with Detective Long. *Id.* at 6. Detective Long testified that she did not ask Robinson any questions prior to him making the above statements. *Id.* at 101.

Based on the record, it is clear, as the PCRA court concluded, that "[Robinson]. . . volunteered the statements. As such, no viable suppression issue existed." PCO at 9; *see also Commonwealth v. Avondet*, 654 A.2d 587, 589 (Pa.Super. 1995) (concluding statements not made in response to

police conduct or questioning were not subject to suppression). Thus, Robinson's claim of ineffectiveness fails because his underlying claim lacks arguable merit. **See Commonwealth v. Tedford**, 960 A.2d 1, 47 (Pa. 2008) (rejecting ineffectiveness claim where underlying claim lacked arguable merit). Therefore, the PCRA court did not err in denying Robinson relief on this claim.

*PRIOR BAD ACTS*

Robinson next contends that trial counsel was ineffective for failing to object to and/or ask for a limiting jury instruction regarding evidence of what he characterizes as prior bad acts: (1) K.W.'s testimony that Robinson physically abused her sister, and (2) the testimony of K.W.'s mother that Robinson began dating the victim's sister when she was underage.

Generally, prior bad act evidence is inadmissible to show a defendant, in allegedly committing the crime, acted in conformity with those prior bad acts. **Commonwealth v. Aikens**, 990 A.2d 1181, 1185 (Pa.Super. 2010). However, prior bad act evidence may be admissible when offered for a proper purpose, such as to show (where relevant and otherwise admissible) motive, identity, opportunity, preparation, or absence of mistake. **Commonwealth v. Dillon**, 925 A.2d 131, 137 (Pa. 2007). The admissibility of evidence, including prior bad act evidence, is within the discretion of the trial court. **Commonwealth v. Johnson**, 638 A.2d 940, 942 (Pa. 1994). The trial court must balance the probative value of the evidence against its prejudicial effect. **Commonwealth v. Ross**, 57 A.3d 85, 98 (Pa.Super. 2012) (*en banc*) (citing

*Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009)). Further, in a criminal case, the Commonwealth must provide notice before trial or during trial, (if permitted by the court), of the general nature of the prior bad acts it intends to introduce at trial. Pa.R.E. 404(b)(3).

Here, before trial, the Commonwealth filed a Motion in *Limine*, almost four months before trial, to introduce prior bad act testimony by K.W. that she observed Robinson physically abuse her sister and threaten to kill the victim and the victim's sister. **See** Commonwealth Motion in *Limine*, filed 6/12/13, at 1-2 (unpaginated). It proffered to use this evidence to explain the lack of prompt complaint by K.W. in reporting the sexual abuse. **Id.** at 2. At the hearing on the motion, defense counsel objected to this evidence based on lack of specificity. N.T., Trial, 10/7/13, at 28. The Commonwealth claimed that K.W. would testify about an incident of physical abuse by Robinson against her sister when the victim, Robinson, and the victim's sister were on their way to the orthodontist. **Id.** at 29. It also reiterated what was argued in its written motion, that K.W. would testify about Robinson threatening to kill her sister. **Id.** at 29. The trial court permitted the evidence. **Id.** at 31.

While Robinson agrees that defense counsel objected to the motion based on lack of specificity, he claims that counsel should have also objected based on lack of notice from the Commonwealth. **See** Pa.R.E. 404(b)(3); **See** Robinson's Br. at 32-33. This argument is meritless. Rule 404(b)(3) requires notice of "the general nature" of the evidence. The purpose of Rule 404(b)(3) "is to prevent unfair surprise, and to give the defendant reasonable time to

prepare an objection to, or ready a rebuttal for, such evidence to be admissible." **Commonwealth v. Lynch**, 57 A.3d 120, 125-126 (Pa.Super. 2012) (quoting Pa.R.E. 404, cmt).

In this case, Robinson was on notice of the "general nature" of the evidence that the Commonwealth wished to introduce at trial, *i.e.*, domestic abuse and threats. Additionally, in his PCRA petition, he admitted that "the allegation of violence was in the discovery." Petition at 12 (unpaginated). Thus, unfair surprise was prevented and the lack of notice claim is without merit. **See Lynch**, 57 A.3d at 126 (rejecting claim of lack of notice of prior bad acts where defendant failed to demonstrate unfair surprise); **see also Commonwealth v. Stallworth**, 781 A.2d 110, 118 n.2 (Pa. 2001) (concluding sufficient notice where evidence of prior bad acts was in discovery). Yet, Robinson claims that failing to object on the basis of notice was highly prejudicial because, "the jury heard evidence that he hit a younger female woman, who was the sister of the complainant." Robinson's Br. at 34. While this may have been prejudicial to Robinson, the trial court determined that the "probative value of the evidence," *i.e.*, K.W.'s lack of prompt complaint, outweighed the potential for its prejudice. **See** Pa.R.E. 404(b)(2). Additionally, the potential prejudice that Robinson could have suffered from the jury hearing this evidence was cured by the limiting instruction that the trial court gave to the jury. **See** Pa.R.E. 404(b)(2), cmt. (trial court may consider whether and how much such potential for prejudice is reduced by cautionary instructions). The trial court gave the following limiting instruction:

You have heard evidence tending to prove that the defendant was guilty of improper conduct for which he is not on trial. And I am speaking of the testimony to the effect that the defendant allegedly committed a domestic assault on the victim's sister.

This evidence is before you for a limited purpose. That is, for the purpose of tending to explain the victim's lack of prompt complaint for the alleged sexual assaults.

This evidence must not be considered by you in any other way other than for that purpose just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

N.T., Trial, 10/8/13, at 171.

Even if counsel had effectively objected on the basis of notice, there also is not a reasonable probability that a different verdict would have resulted, considering the jury found K.W.'s testimony credible concerning the acts of sexual abuse. Therefore, this claim of ineffectiveness also fails as Robinson has not proved prejudice. *See Commonwealth v. Walker*, 36 A.3d 1, 14 (Pa. 2011) (ineffectiveness claim rejected where defendant failed to establish prejudice). The PCRA court properly dismissed Robinson's claim of ineffective assistance of counsel as it lacks merit and Robinson fails to establish prejudice.

Robinson next contends that direct appellate counsel was ineffective for failing to raise trial counsel's alleged ineffectiveness for not objecting to K.W.'s testimony on the basis of lack of notice. *See* Robinson's Br. at 33-34. This argument is without merit because claims of trial counsel ineffectiveness may not be raised on appeal but instead must "await collateral review." *See Commonwealth v. Britt*, 83 A.3d 198, 203 (Pa.Super. 2013) (holding that

appellant cannot seek review of ineffectiveness claims on direct appeal). Therefore, the PCRA court did not err in dismissing this claim.

Robinson also contends that trial counsel was ineffective for not objecting to prior bad act evidence in the form of testimony from K.W.'s mother, W.B. When asked how she met Robinson, W.B. testified that Robinson started dating the victim's sister when the victim's sister was 14 years old. N.T., Trial, 10/8/13, at 75. W.B. said she later found out that Robinson was 18 years old at the time. *Id.* at 76.

Robinson contends that W.B.'s testimony regarding his relationship with the victim's sister was prior bad act evidence and, as such, counsel should have objected to the testimony or asked for a limiting instruction. *See* Robinson's Br. at 35. He argues that this evidence was highly prejudicial because the Commonwealth used it to show that he had a propensity to be in a relationship with minor children. *Id.* For its part, the Commonwealth argues that W.B.'s testimony was not prior bad act evidence because W.B. did not testify that Robinson was having sexual relations with the victim's sister when she was a minor. *See* Commonwealth's Br. at 23.

Even assuming W.B.'s testimony constituted prior bad act evidence, Robinson was not unfairly prejudiced by counsel's failure to object. After a review of the record, "[e]ven had trial counsel somehow raised a successful objection and the testimony had been stricken, there is not a reasonable probability, in light of the evidence of [Robinson's] guilt, that the verdict would have been different." PCO at 10; *see Commonwealth v. Koehler*, 36 A.3d

121, 150 (Pa. 2012) (concluding no prejudice where appellant failed to show that but for counsel's error, result of trial would have been different). The jury clearly credited the testimony of the victim which overwhelming established Robinson's guilt and as such Robinson fails to show prejudice. The PCRA court properly dismissed this claim.

**ILLEGAL SENTENCE - SVP**

Last, Robinson challenges the portion of his judgment of sentence finding him to be an SVP, contending that that portion of his sentence was illegal pursuant to **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017). **Muniz** held that the registration requirements under SORNA constituted criminal punishment. We subsequently applied **Muniz** in **Commonwealth v. Butler**, 173 A.3d 1212, 1217 (Pa.Super. 2017), to hold that trial courts cannot constitutionally apply SORNA's SVP procedures. We explained that doing so would unconstitutionally deprive a criminal defendant of the right to have a jury determine whether the Commonwealth had proven all elements of the crime charged beyond a reasonable doubt:

> [S]ince our Supreme Court has held [in **Muniz**] that SORNA registration requirements are punitive or a criminal penalty to which individuals are exposed, then under **Apprendi** [**v. New Jersey**, 530 U.S. 466 (2000),] and **Alleyne** [**v. United States**, 133 S.Ct. 2151, 2163 (2013)], a factual finding, such as whether a defendant has a "mental abnormality or personality disorder that makes [him or her] likely to engage in predatory sexually violent offenses [,]" 42 Pa.C.S.A. § 9799.12, that increases the length of registration must be found beyond a reasonable doubt by the chosen fact-finder. Section 9799.24(e)(3) identifies the trial court as the finder of fact in all instances and specifies clear and convincing evidence as the burden of proof required to designate

a convicted defendant as an SVP. Such a statutory scheme in the criminal context cannot withstand constitutional scrutiny.

\*\*\*

[Thus], we are constrained to hold trial courts cannot designate convicted defendants SVPs (nor may they hold SVP hearings) until our General Assembly enacts a constitutional designation mechanism. Instead, trial courts must notify a defendant that he or she is required to register for 15 years if he or she is convicted of a Tier I sexual offense, 25 years if he or she is convicted of a Tier II sexual offense, or life if he or she is convicted of a Tier III sexual offense.

***Butler***, 173 A.3d at 1217-1218.

In light of ***Muniz*** and ***Butler***, Robinson's SVP status constitutes an illegal sentence. Therefore, we vacate Robinson's SVP status, pursuant to ***Butler***, and remand to the PCRA court to issue proper notice to Robinson pursuant to 42 Pa.C.S.A. § 9799.23 (governing reporting requirements of sex offenders).

Judgment of sentence affirmed in part. SVP designation vacated. Case remanded with instructions. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 8/17/2018*

- 16 -